In re SCOTT et al.

(District Court, E. D. North Carolina.    January 26, 1900.)

1. BANKRUPTCY—REVIEW OF REFEREE'S DECISION—EXCEPTIONS.

General order No. 27 in bankruptcy (18 Sup. Ct. viii.), providing that a party desiring a review by the judge of an order made by the referee "shall file with the referee his petition therefor, setting out the errors complained of, and the referee shall forthwith certify to the judge the question presented," is mandatory; and the court, on review of the referee's decision, will not consider exceptions not duly filed with the referee.

2. SAME—RECEIVERSHIP—EXPENSES OF RECEIVER.

Where a receiver in bankruptcy was appointed to take charge of and preserve the property of the bankrupt, consisting of stocks of general merchandise in three stores in three different towns, and had charge of the same for 109 days, an allowance to him by the referee of $1.95 per day for each store, to cover his actual expenses in taking care of the property and for clerk hire, *held* reasonable and proper.

3. SAME—COMPENSATION OF RECEIVER.

Where a temporary receiver is appointed by the court of bankruptcy to take charge of and preserve the property of the bankrupt, the court has authority to allow him a just and reasonable compensation for his personal services, payable out of the estate, the amount of which rests in the sound discretion of the court, and is not necessarily a per diem allowance, nor influenced by the consideration that the duties of the receivership did not occupy his entire time.

4. SAME.

A receiver in bankruptcy, selected by the parties in interest as "a good, reliable business man," had possession of three stores belonging to the bankrupt, each containing a stock of general merchandise, of the aggregate value of about $9,000, situated in three different towns, and took care of the property for 109 days. Upon the completion of his trust, the referee in bankruptcy allowed him $250, payable out of the estate, as compensation for his personal services, over and above actual expenses. *Held*, on review, that as nothing appeared showing error or abuse of discretion on the part of the referee, and as the allowance appeared reasonable and just, the referee's order would be affirmed.

5. SAME—EXPENSES OF MARSHAL.

A deputy marshal appointed to take charge of a bankrupt's store and the stock of goods therein, and responsible on his bond for the value of the property, may hire a competent person as watchman, if he has any reason to apprehend danger to the property; and a charge in his accounts of $1 per day for the services of such watchman will be allowed by the court as expenses.

6. SAME—COMPENSATION OF MARSHAL.

A deputy marshal appointed to take charge of a store of the bankrupt in a town other than that in which he resides, and to inventory the stock of general merchandise contained therein, who remains in possession for a month, will be allowed compensation at the rate of $2.50 per day, together with his actual and necessary expenses, but not including the cost of his board and lodging.

In Bankruptcy.    On questions certified by referee in bankruptcy.

Iredell Meares, for receiver.

H. L. Stevens and W. R. Allen, for bankrupt and creditors.

PURNELL, District Judge.    A petition was filed by creditors May 24, 1899, to have I. J. Scott and W. T. Grisham, trading as Scott & Grisham and Scott & Co., declared bankrupts, and an adjudica-

tion made June 20, 1899. Two days thereafter an order was passed requiring the marshal to take possession and hold the property, which consisted of stocks of goods in stores at three points,—Rosehill, Warsaw, and Wallace. Proceedings were had to have C. J. Scott declared a member of the firm, pending which an arrangement was made between the creditors and bankrupts by which the adjudication was revoked and petition dismissed; all claims having passed to parties who joined with the bankrupts in asking for such order,—such parties agreeing to pay all costs. On June 23, 1899, by consent, to save expense, a temporary receiver was appointed to take charge of the stores, take an inventory, and preserve the property. By a receipt for a fee of $300 paid the attorney for the petitioning creditors June 30, 1899, by Heyer Bros., it appears an arrangement was concluded on that day by which petitioning creditors were settled with, and their claims assigned; but the receiver continued on until October 10th, when the proceedings were dismissed, except as to costs, and the cause retained for the settlement of costs. The marshal held the property from May 26th to June 24th, when it was turned over to the receiver, Boney, who held it from that date to October 10th. On November 14, 1899, the referee certified a report of a hearing before him on the question of the adjustment of costs, with certain exceptions taken on such hearing. The cause was set for hearing before the judge at chambers on December 4, 1899, and counsel notified that exceptions must be filed within 10 days, in accordance with general order No. 27 of the supreme court (18 Sup. Ct. viii.). The hearing was continued from time to time, and heard January 12, 1900. On November 29, 1899, counsel filed exceptions other than those taken before the referee, and took depositions on such exceptions on January 2, 1900.

The general orders or rules promulgated by the supreme court in accordance with the statute (section 30) are obligatory and binding upon courts of bankruptcy. They confer rights, as well as prescribe rules of practice. After the time within which an act is required to be done by parties to proceedings in bankruptcy has expired, rights are thereby conferred by law, and the courts will not deprive the party to whose benefit such rights inure by such neglect or omission on the part of his adversary. Courts "cannot do as they please" to as great extent as some attorneys think and assert. General rule No. 27 provides:

"When a bankrupt, creditor, trustee, or other person shall desire a review by the judge of any order made by the referee, he shall file with the referee his petition therefor, setting out the error complained of; and the referee shall forthwith certify to the judge the question presented, a summary of the evidence relating thereto, and the finding and order of the referee thereon."

Hence exceptions taken after the 10 days expired, unless there was an order before, enlarging the time, no matter what may have been the excuse, cannot now be considered. The court must follow the rules.

Taking the record as sent up for review in accordance with the rule, the receiver is allowed actual expenses, clerk's hire, etc., of

taking care of the stocks of goods, airing the stores during the hot weather to prevent mildewing, etc.,—an average per store of $1.95 per day. This seems to be reasonable, and, under the circumstances, as economical as could be expected. The order of the referee allowing the receiver these expenses is affirmed.

The receiver excepts to the order of the referee making a "lump" allowance of $250 to him for personal services as receiver, and in the record files a petition asking for a per diem allowance of $3 for the 109 days he was engaged in caring for the property of the bankrupts. On the other hand, the bankrupts object to the referee's allowance of $250, as excessive, for that the same is not warranted by law, and, further, that said receiver was not taken away from his own business, but during the entire time looked after his individual business, and insist that 50 cents per day would be adequate allowance. The receiver was selected or recommended by the parties as a good, reliable business man, and required to give bond for the performance of his duties under the orders of the court, and was responsible on such bond for the property. The pittance contended for by the bankrupts is too absurd to be seriously considered. When a party is appointed a receiver, he is not expected or required to give up all other business, or devote himself exclusively to the duties of receiver. If he preserves and accounts for the property, and obeys the orders of the court of which he is an officer, the court will not look beyond, or fix his compensation by what he is making from other enterprises or investments. Neither the bankrupt act, the law, nor equity, contemplates any such communistic reasoning,—to keep him down on a level with day laborers or less enterprising citizens. "That such allowance is not contemplated in law" does not seem to be supported by any authority. Bankr. Act, § 2, subsecs. 3, 5 (Loveland, Bankr. §§ 77–79), expressly authorize the appointment of receivers, and make such receivers officers of the court. Section 62 provides that "the actual and necessary expenses incurred by officers in the administration of estates shall * * * be paid or allowed out of the estate in which they are incurred." These provisions cover fully the question of expenses. The section quoted (2), after specifying powers conferred on courts of bankruptcy, provides, "nothing in this section contained shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated." The powers enumerated seem to be ample to authorize an allowance to an officer of the court for services rendered the estate, especially when appointed by consent, and utilized by the bankrupts and their friendly creditors, who have "arranged" to have the proceedings dismissed, pay the costs, and take charge of the estate. The provisions of the act, as said Judge Hawley in Blake, Moffitt & Towne v. Francis-Valentine Co. (D. C.) 89 Fed. 691, should be interpreted reasonably, and according to a fair import of its terms, with a view to effect its objects and to promote justice. The act seems to contemplate that receivers, when appointed and authorized to take charge of property, shall be as substitutes for the marshal;

and in bankruptcy proceedings the marshal is allowed the fees allowed by law, as in other proceedings. The receiver (section 54) is required to report to the attorney general, as is the marshal and other officers, when required, such information as he may have. It would be absurd to contend that the court having the right to appoint has not the power, having jurisdiction of the entire estate, to pay its receiver out of the estate. The compensation is not fixed in the statute. How, then, shall it be regulated? Appointed as a substitute for the marshal, when the circumstances of the case, in the discretion of the court, require it, he should be paid as the marshal is paid under similar circumstances. For keeping personal property the marshal is allowed by law such compensation as the court may allow. Rev. St. § 829; The Conqueror, 166 U. S. 135, 136, 17 Sup. Ct. 510, 41 L. Ed. 937. It would seem, then, that the compensation of a receiver in bankruptcy is in the sound discretion of the court, and is contemplated in law. This conclusion is inevitable upon other grounds,—rules in equity which govern bankruptcy proceedings, when applicable, and general principles governing the appointment of receivers; but it is here put upon the grounds which best answer the argument of the learned counsel in this cause. Having power in its discretion to appoint receivers, the court has power in its discretion, "in contemplation of law," to pay such receiver such compensation as may be reasonable and just. To allow 50 cents per day would not be reasonable or just to a "good, reliable business man," acting as a bonded officer of the court. Bankrupts' exception to referee's allowance is therefore overruled.

The lowest per diem allowed a marshal is $2 per day for attending a commissioner's court, but in taking care of property the allowance is not governed by the time employed, but by all the surrounding circumstances. The referee is a man of discretion, lives in the section where the stores are situated, has heard the testimony, looked into the eyes of the witnesses, and has never shown himself to be parsimonious in allowances. In short, living in that section, knowing all the surrounding circumstances, and there not being evidence to show error on his part, the allowance seems to be reasonable and just. Under the circumstances, I would not feel justified, in the exercise of a sound discretion, in disturbing the order of the referee allowing the receiver $250 for his services. The compensation of receivers is largely discretionary. It should be reasonable and fair. Stuart v. Boulware, 133 U. S. 78, 10 Sup. Ct. 242, 33 L. Ed. 568; Cake v. Mohun, 164 U. S. 311, 17 Sup. Ct. 100, 41 L. Ed. 447; and numerous authorities to the same effect. The only compensation limited in the bankrupt act is that allowed the clerk, referee, and trustee. The general idea of the act seems to be that the law shall be administered economically, but it would be a violent presumption to conclude that congress intended to sacrifice efficiency of service to economy; that the offices where the compensation is not limited should be let to the lowest bidder, or incompetent men appointed because they could be secured at a low price. The order of the referee is affirmed.

The only other exception properly certified in the record is to the marshal's account for expenses, of which the referee says:

"The referee is informed by the marshal that the court has approved allowances of deputy marshals, while in charge of property under special warrant, at a rate of three dollars per day. He therefore incloses these accounts without recommendation."

As in allowances for receivers, so in expenses and allowances to the marshal, there is and can be no fixed rule. If the court has approved accounts in which deputy marshals were allowed $3 per day and expenses, it was because all the circumstances justified such allowance. As stocks differ in value, so men differ in price. To take care of, inventory, and sell a stock of goods of one kind would require a man of more education, experience, and ability than to perform the same services where the stock was smaller and of a kind more easily handled. The entire stock of goods in this case inventoried about $9,000, consisting of general merchandise such as is kept in general stores in towns. There was some talk at the time which warranted an instruction to the marshal to use special caution in caring for the three stores and preserving the property for the estate. This is aliunde the record, but within the knowledge of the court. The allowance contended for in the exception is the price of an uneducated day laborer. Such men are not appointed deputy marshals, or given charge of property in custodia legis. Possibly some of that class are more reliable than, and would perform the manual duties equally as well as, those who are designated; but there are duties required that they could not perform,—as taking inventory, making return, etc. For many obvious reasons, they are not selected, and what they could be hired for is no criterion by which to fix compensation for those who are. One item in the marshal's account is $28 paid for guarding the store at Wallace 28 days. The marshal was responsible on his bond for the property, and it was proper that a competent man should be hired to guard the property by day and by night, if he had reason to even suspect that there was danger of fire or robbery. The court will not weigh in golden scales expense accounts incurred by its officers in preserving property in the custody of the court. The items all seem to be reasonable, are sworn to as provided by law, and will be taxed against the parties who have assumed the costs. There is no provision of law allowing board to deputy marshals. The statute allows deputy marshals $2 per day when attending court. They are allowed mileage or actual expenses when serving or endeavoring to serve process. But nowhere have I been able to find any provision for paying board bills, except of the marshal and deputies when attending a regular term of court, not to exceed so much per day. The allowance of $3 per day to the three deputy marshals, considering all the surrounding circumstances in this case, seems to be too liberal, keeping in view the fees allowed by law. It was regular employment for a month,—true, away from home; and, in my opinion, $2.50 per day is reasonable and fair. All vouchers for board will be eliminated from the bill of costs, and the deputy marshals each allowed $2.50 per day, and actual

expenses necessarily incurred, for which vouchers have been filed. The bill of costs will be reformed accordingly. Except as herein modified, the orders and rulings of the referee embodied in the report certified for review are affirmed.